# MOTOR VEHICLE LEASE AGREEMENT

**LESSOR:** FRANKLIN SUSSEX AUTO MALL INC.
315 ROUTE 23
SUSSEX NJ 07461

**LESSEE / CO-LESSEE:** PRO IMAGE
GWENDOLYN B TAYLOR
130 SPRING ST
NEWTON NJ 07086 SUSSEX

Lessee and Co-Lessee ("You" or "Your") agree to lease the leased vehicle described below, including all equipment, parts and accessories from Lessor ("we," "us" and "our") on the terms and conditions of this Motor Vehicle Lease Agreement ("Lease"). This Lease will be assigned to DCFS Trust or its successors and assigns ("Assignee," "we," "us" and "our"). The consumer lease disclosures contained in this Lease are also made on behalf of Assignee.

## PRIMARY USE OF VEHICLE
You agree to use the Vehicle primarily for personal, family or household purposes. However, if the following box is checked, You will use the Vehicle primarily for business or commercial purposes. ☐

## STATEMENT OF FEDERAL TAX OBLIGATION
You declare Your federal tax status is: ☐ exempt, or ☒ non-exempt

## DESCRIPTION OF THE VEHICLE BEING LEASED (THE "VEHICLE")

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER | NEW/USED | MILEAGE AT DELIVERY |
|---|---|---|---|---|---|
| 2003 | JEEP | GRAND CHEROK | 1J4GW48S33C544774 | ☒ NEW ☐ USED | 15 |

NO. OF CYLINDERS: 6   ☒ Power Steering   ☒ Automatic Transmission   ☒ Power Brakes   ☒ Air Conditioning

---

**[1] Amount Due at Lease Signing or Delivery** (Itemized below): $4644.88

**[2] Monthly Payments.** Your first Monthly Payment of $458.68 is due on 10/05/2002 followed by 38 payments of $458.68 due on the 5th of each month. The total of Your Monthly Payments is $17888.52

**[3] Other Charges** (not part of Your Monthly Payment): Vehicle Turn-In Fee (if You do not purchase the Vehicle) $300.00

**[4] Total of Payments** (The amount You will have paid by the end of the Lease): $21899.72

---

### [5] Itemization of Amount Due at Lease Signing or Delivery

**Amount Due at Lease Signing or Delivery:**
- Capitalized Cost Reduction: $3500.00
- First Monthly Payment: $458.68
- Refundable Security Deposit: $475.00
- License fees: N/A
- Title fees: $121.20
- Registration fees: N/A
- N/A: N/A
- DOC FEE: $90.00
- N/A: N/A
- N/A: N/A
- **Total: $4644.88**

**How the Amount Due at Lease Signing or Delivery will be paid:**
- Net Trade-In Allowance: N/A
- Rebates and Noncash Credits: $3500.00
- Amount to be Paid in Cash: $1144.88
- N/A: N/A
- N/A: N/A
- **Total: $4644.88**

---

### [6] Your Monthly Payment is Determined as Shown Below:

- Gross Capitalized Cost. The agreed upon value of the Vehicle is $29182.00 and any items You pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance): $31594.06
- If You want an itemization of this amount, please check this box. ☐
- Capitalized Cost Reduction: $3500.00
- Adjusted Capitalized Cost: $28094.06
- Residual Value: $13979.40
- Depreciation and any Amortized Amounts: $14114.66
- Rent Charge: $3773.86
- Total of Base Monthly Payments: $17888.52
- Lease Payments. The number of payments in Your Lease: 39
- Base Monthly Payment: $458.68
- Monthly Sales/Use Tax: N/A
- Other N/A: N/A
- **Total Monthly Payment ("Monthly Payment"): $458.68**

---

**[7] Early Termination.** You may have to pay a substantial charge if You end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier You end the Lease, the greater this charge is likely to be.

**[8] Excessive Wear and Use.** You may be charged for excessive wear based on our standards for determining excess wear and use and for mileage in excess of 35000 miles during the Lease at the rate of $.20 per mile. At the end of the Lease Term, You will receive a refund of $ N/A per mile for unused purchased miles (between N/A miles and N/A miles over the term of this Lease, less any amounts You owe under the Lease). You will not receive a refund if the Vehicle is destroyed or stolen, You are in Default, You end this Lease early or You purchase the Vehicle.

**[9] Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle "AS-IS" at the end of the Lease Term for $13979.40 plus any taxes or fees required by law, plus a processing fee of $159.00.

**[10] Other Important Terms.** See the Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges and insurance and any security interest, if applicable.

**[11] Estimated Official Fees and Taxes.** The total estimated amount You will pay for official fees, license, title and registration fees, and taxes over the term of Your Lease, whether included with Your Monthly Payment or assessed otherwise is $393.90. This amount is an estimate and may change.

**[12] Optional Insurance and Other Products.** You are not required to buy any of the optional insurance or other products listed below to enter into this Lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless You are accepted by the Provider. By Your initials below, You agree that You have received a notice of the terms and cost of the insurance or product, and You want to obtain the insurance or product for the premium or charge shown. A portion of the Premium or charge shown may be retained by the Lessor (Dealer).

☐ Credit Life Provider N/A   Initial Coverage $ N/A   Prem $ N/A   Lessee/Co-Lessee Initials N/A
☐ Credit Disability Provider N/A   Maximum Mo. Benefit $ N/A   Prem $ N/A   Lessee/Co-Lessee Initials N/A

**[13] Warranties.** The Vehicle is covered by the standard manufacturer's new vehicle warranty and any other express warranty included in the Gross Capitalized Cost above. We assign to You all rights we have under any of those warranties. You acknowledge that You have received a copy of the indicated warranties.

We lease the Vehicle to You "AS-IS" EXCEPT AS EXPRESSLY PROVIDED UNDER THIS LEASE AND UNLESS PROHIBITED BY LAW, WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF. WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER.

**[14] Additional Disclosures Required by New Jersey Law.**
Other Lease Information. MANUFACTURER'S SUGGESTED RETAIL PRICE (MSRP): $29870.00
Total Cost of Lease: The total cost of this Lease $35879.12. This disclosure is required by New Jersey law. This amount is figured by adding the Amount Due at Lease Signing or Delivery (minus the first monthly payment and the refundable security deposit, see #5 above), the total of Monthly Payments (see #2 above) and the amounts imposed on You as of the end of the Lease Term. Because this disclosure is based on certain assumptions and does not include all costs (such as insurance), your actual total cost of this Lease may differ.

PRIOR USE OF VEHICLE: ☐ Demonstrator   ☐ Daily Rental   ☐ Personal, Family or Household   ☐ Unknown   ☐ Not Applicable

### VEHICLE INSURANCE INFORMATION

INSURANCE AGENT/COMPANY NAME AND ADDRESS:
ALLSTATE INS CO DIRECT
721 US HIGHWAY 202/206
BRIDGEWATER NJ 08807-1759
PHONE: (973)827-4141
POLICY NUMBER: 909009088106/02
POLICY HOLDER NAME AND ADDRESS (IF OTHER THAN LESSEE): N/A
EFFECTIVE DATE: 06/02/2002
EXPIRATION DATE: 12/02/2002

**SEE BACK OF THIS LEASE FOR ADDITIONAL TERMS AND CONDITIONS, INCLUDING ARBITRATION DISCLOSURES.**

NOTICE TO THE LESSEE: (1) CAUTION—DO NOT SIGN THIS LEASE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS LEASE. You acknowledge receipt of a completed copy of this Lease.

LESSEE SIGNATURE   DATE 10/05/2002
CO-LESSEE SIGNATURE   DATE 10/05/2002

NOTICE: THE LESSEE AND THE LESSOR SHALL BE ENTITLED TO REVIEW THE CONTRACT FOR ONE BUSINESS DAY BEFORE SIGNING THE CONTRACT.   OCT 0 9 2002

The authorized signature of the Lessor below has the effect of (1) accepting the terms and conditions of this Lease, (2) acknowledging verification of the Lessee's vehicle insurance information above, and (3) assigning to DCFS Trust   580 WHITE PLAINS RD 5TH FLOOR TARRYTOWN NY 10591-5107 or its successors and assigns all right, title and interest in and to the Vehicle and this Lease. This Lease will be serviced by DaimlerChrysler Services North America LLC ("Chrysler Financial"). You agree to make Your payments to Chrysler Financial.

LESSOR: FRANKLIN SUSSEX AUTO MALL INC.   DATE   BY: Business Mgr

---

### PRIVACY POLICY OF DAIMLERCHRYSLER SERVICES NORTH AMERICA/CHRYSLER FINANCIAL/DCFS TRUST ("we," "us," and "our")

**Categories of Information We Collect**
We collect nonpublic personal information about You from the following sources:
- Information we receive from You on applications or other forms
- Information about Your transactions with us, our affiliates or others; and
- Information we receive from consumer reporting agencies and other outside sources.

**Categories of Information We Disclose**
We may disclose all of the information that we collect, as described above.

**Categories of Affiliates and Third Parties to Whom We Disclose Information About Current and Former Customers**
We may disclose all of the information that we collect, which relates to our transactions or experiences with You among our affiliated companies. Companies, which are affiliated with us, include any company that controls us, any company we control, or any company under common control with us. In other words, we are affiliated with our "family of companies."

We may disclose all of the information that we collect, as described above, to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

We may also disclose all of the information that we collect, as described above, with other nonaffiliated third parties as permitted by law.

**Opting Out of Disclosure**
Because we only disclose information to nonaffiliated third parties as permitted by law, or through a joint marketing agreement, opt-outs of such disclosures are not required.

**Policies and Practices to Protect the Confidentiality and Security of Nonpublic Personal Information**
We restrict access to nonpublic personal information about You to those employees, outside contractors, and businesses who jointly market our products and services, who need to may need to know that information to provide products or services to You. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to protect Your nonpublic personal information.

**Privacy Policy Changes and Future Disclosures**
We may from time to time change our Privacy Policy. Therefore, we reserve the right to disclose any and all information to our affiliates and other nonaffiliated third parties as permitted by law.

ZONE

**15. Vehicle Insurance.** You agree to provide primary insurance coverage as indicated below during the Lease Term and until the Vehicle is returned: (a) liability insurance with limits of not less than $100,000 per person, $300,000 per occurrence for bodily injury, and $50,000 per occurrence for property damage; (b) collision and comprehensive coverage with a deductible of no more than $1,000; and (c) any other insurance required by the state where the Vehicle is registered. You may obtain insurance from an insurer of Your choice which is reasonably acceptable to us. The insurance policy must name Assignee as additional insured and loss payee and You must provide us with a copy of Your policy. The policy must require the insurance company to notify us at least 30 days in advance of any change in coverage or cancellation. You will notify us and Your insurance company within 24 hours after any damage, loss, theft, seizure or impoundment of the Vehicle. You authorize us to cash or negotiate checks or drafts from Your insurance company and endorse Your name on such items in Your name.

No physical damage or liability Insurance coverage for bodily injury or property damage caused to others is included in this Lease.

**16. Maintenance.** You agree to maintain, service and repair the Vehicle according to the manufacturer's recommendations and any applicable warranty. You will keep the Vehicle in good operating condition and return all maintenance records with the Vehicle. You agree to comply with all Vehicle recall notices. You agree to pay for all operating costs including, but not limited to, gas, oil, antifreeze, parking fees, inspection and certification fees, fines, towing, and replacement tires. Lessor will not provide maintenance services unless You agree at Your option to buy a separate maintenance agreement.

**17. Vehicle Use and Return.** You agree not to use or permit the Vehicle to be used: (a) in violation of any law; (b) to transport passengers or goods for hire; (c) in a way that causes the cancellation or suspension of any applicable insurance or warranty; (d) by unlicensed drivers; or (e) outside of the United States; provided however, that You may take the Vehicle to Mexico and Canada for not more than 30 days. You will not change or modify the Vehicle in any way without our prior written approval. If You do not exercise Your Purchase Option, You agree to return the Vehicle to us at the time and place we specify at Your expense. Your must cooperate in the completion of a condition report when You return the Vehicle. You agree to obtain our written consent to use the Vehicle after Lease termination. If You do not return the Vehicle at Lease termination, You will be in default and must pay us an amount equal to twice the Monthly Payment for each month, or any part of a month, until the time You return the Vehicle to us. You agree to certify the Vehicle's odometer reading, as required by law, at termination of this Lease or transfer of ownership.

**18. Additional Purchase Option Provisions.** At scheduled Lease termination, You may purchase the Vehicle for the amount set forth in Section 9 on the front of this contract. At any time prior to the scheduled Lease termination, You have an option to purchase the Vehicle for the Early Purchase Option price in Section 9, plus all amounts then due, including any delinquent Lease payments, and late charges; plus any Lease payments not yet due, less unearned Rent Charges calculated on a constant yield basis; plus all taxes and fees required by law. You agree to pay a purchase option processing fee. You agree to title and register the Vehicle in Your name when You purchase it.

**19. Scheduled Termination.** If this Lease is not terminated early and if You do not purchase the Vehicle, You will, at the scheduled termination: (a) return the Vehicle; (b) complete a signed odometer statement and Vehicle condition report; and (c) pay the following amounts: (i) any amounts owed for excess vs wear and excess mileage, plus (ii) all unpaid amounts that are due or past due under this Lease, plus (iii) the Vehicle Turn-in Fee, plus (iv) any official fees and taxes related to scheduled termination.

**20. Excessive Wear Standards.** Upon scheduled termination the Vehicle must be in the same condition as when delivered to You, except for reasonable wear. You must pay to us the cost of repair or the loss in value resulting from excessive wear, including, but not limited to: (a) damage to the major drive line components not covered by warranty, (b) dents and/or rust, (c) structural damage to the frame, (d) damage that is beyond ordinary wear and tire; (e) missing parts or accessories; (f) missing tires, tires that are of lesser quality than the original tires, or tires that have less than 1/8 inch tread, (g) stains, chinks, holes or plugs in the windshield, or other glass, (h) widely deep scratch or (i) any damage that makes the Vehicle unsafe or unlawful.

If You do not agree with our invoice for the amount owed for excess wear and use, You may obtain (at Your own expense) a professional appraisal of the amount required to repair or replace parts, or the amount which the excessive wear and use reduces the value of the Vehicle. You must notify us in writing within seven (7) business days following the earlier of the mailing or delivery of the invoice if You choose to have such an appraisal done, and the appraisal must be performed within ten (10) business days after You give us notice of Your decision to have an appraisal performed. The appraisal shall be performed by an independent third party agreed to by You and Assignee. The appraiser's findings shall be final and binding on You and Assignee. If You fail to give us written notice of Your election to obtain an independent appraisal within the time allotted, the amount stated on our invoice for excess wear and use shall be deemed final and binding on You and Assignee.

**21. Early Termination.** You may terminate this Lease before the end of the Lease Term if You are not in Default (see Section 23). If You do not purchase the Vehicle, the charge for such early termination is the Early Termination Liability defined below. We may terminate this Lease before the end of the Lease Term if You are in Default (see Section 23).

**Early Termination Liability.** Your Early Termination Liability is calculated as follows: (a) all unpaid amounts due under this Lease; plus (b) any official fees and taxes, plus all expenses related to recovering, obtaining, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees, collection and court costs to the extent not prohibited by law, plus (d) a $300 early termination administrative fee, plus (e) the difference, if any, between: (i) the Unpaid Adjusted Capitalized Cost and (ii) the Vehicle's then Fair Market Wholesale Value.

**Unpaid Adjusted Capitalized Cost.** The Unpaid Adjusted Capitalized Cost is calculated by reducing the Adjusted Capitalized Cost (Section 6) each month by each Monthly Payment Due Date by the difference of the Base Monthly Payment and the part of the Rent Charge earned in that month on a constant yield basis.

**Fair Market Wholesale Value.** The Fair Market Wholesale Value will be determined in one of the following ways: (a) by a written agreement between You and us; (b) with in 10 days of early termination, You may obtain, at Your own expense, from an independent third party agreeable to both You and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall be final and binding and then used as the Fair Market Wholesale Value; (c) determined by us in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles or by disposing of the Vehicle in an otherwise commercially reasonable manner; or (d) if the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, the Fair Market Wholesale Value will equal: (i) the amount of any proceeds we receive from Your required insurance, plus (ii) the amount of Your deductible under such insurance if that amount has been paid to us. If there are no insurance proceeds, the Fair Market Wholesale Value will be zero.

**22. Early Turn-In.** You have the option to turn in the Vehicle prior to the end of this Lease. Upon Early Turn-In, You must pay Lessor the total of: (a) all remaining Monthly Payments under this Lease, (b) less the unearned Rent Charge calculated on a constant yield basis; (c) plus all taxes and fees required by law; (d) plus any excess mileage charges and excess wear and use charges; (e) plus any other amount You owe Lessor; (f) less Your Refundable Security Deposit (if any). If You terminate this Lease early and do not pay this amount by the due date identified on Your final billing statement, You will owe the amount provided in Section 21 above.

**23. Default.** You will be in Default if: (a) You fail to make any Monthly Payment within 15 days after it is due; (b) You break any promise or conditions in this Lease or any other agreement with us; (c) You fail to maintain required insurance, (d) You fail to return the Vehicle as we specify; (e) You give false or misleading information on Your credit application or other document to us; (f) You die, are declared incompetent, become insolvent, a bankruptcy petition is filed by or against You, or You dissolve or cease active business affairs; (g) The Vehicle is seized, or levied upon by any government or legal process; (h) The Vehicle is destroyed, abandoned, stolen or damaged beyond repair; (i) Your driver's license expires or is suspended, revoked or canceled; or (j) Anything else happens that we reasonably believe in good faith endangers the Vehicle or Your ability to pay.

**24. Remedies for Default.** If this Lease is in Default, we may take any or all of the following actions: (a) Terminate this Lease and Your rights to the Vehicle; (b) Take possession of the Vehicle without prior demand, unless otherwise required by law. We may take any personal property in the Vehicle when we take it. We will hold the personal property for twenty (20) days. If You do not pick up the property within that time, we may dispose of it any way we determine. (c) Recover all expenses related to enforcing this Lease and obtaining, storing and selling the Vehicle, including, without limitation, reasonable attorneys' fees and court costs, to the extent not prohibited by law; (d) Take any reasonable action to correct the Default or to prevent our loss; (e) Require You to return the Vehicle and any related records; (f) Make a claim for insurance or service contract benefits or refunds available on Your Default and apply such amount to the amount You owe; or (g) Use any remedy we have at law or in equity. You agree to reimburse us for any amounts we choose to pay under this Lease that You are required to pay, including amounts we pay to cover Your Default or to preserve our rights to the Vehicle.

**25. Refundable Security Deposit.** Your Security Deposit may be used to pay all amounts that You fail to pay under this Lease or to satisfy any remedy for Default. Upon termination of this Lease and our determination that no additional amounts may be due (such as personal property taxes not yet billed), we will refund to You any portion of the Security Deposit not applied to amounts You owe. Your Security Deposit cannot be used as a Monthly Payment. You will not earn interest on Your Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Security Deposit will neither be paid to You nor applied to reduce Your obligations under this Lease.

**26. Total Vehicle Loss/Gap Waiver.** If the Vehicle is subject to a total loss due to collision, destruction or unknown theft, You will pay us the Gap Amount which is the difference between the Early Termination Liability set forth in Section 21 and the insurance proceeds we receive based on the total loss. We agree to waive the Gap Amount if You had our required vehicle insurance at the time of total loss, in which case You will pay to us the sum of: (1) all unpaid amounts that are due or past due under this Lease; plus (2) the amount of Your insurance deductible; plus (3) any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss. You must continue to pay Your scheduled Monthly Payments until we receive Your full insurance proceeds.

**27. Late Charge; Other Charges.** If all or any part of a Monthly Payment is not received within 15 days after it is due, You will pay a late charge of 5% of the unpaid amount or $25, whichever is greater. If any check, draft or order or other similar instrument is returned to us unpaid for any reason, including, but not limited to, non-sufficient funds, You will pay a returned instrument charge of $25. Each time we pay a charge, tax, parking ticket, fine or other item for You that You are required to pay. You will pay us a service fee of $25. We will invoice You for this service fee in addition to the amount of any such charge, tax or other item.

**28. Taxes, Registration And Titling.** You agree to pay all title, registration, license, inspection, testing, personal property taxes and other fees, taxes and charges imposed by government authorities in connection with the Vehicle, this Lease or any amounts due or payable arising from this Lease. You agree to reimburse us for all license, title and registration costs, fees, charges and taxes relating to the Vehicle or Lease. Our costs associated with personal property tax for the Vehicle will be estimated annually and billed to You monthly as part of Your Monthly Payment (the "Local Fee"). Any payment we receive from You will first be applied to the Local Fee and then to Your Monthly Payment. The Local Fee is an estimate of the amount required to reimburse us for our costs associated with personal property tax for the Vehicle. The amounts You pay as a Local Fee are not placed in an escrow account or impound account and will not earn interest. If there is a variance between the amount of the Local Fee and the amount of personal property tax we pay, no deficiency will be collected from You, and no surplus will be paid to You. We have no duty to account to You for the fees, charges and taxes we pay. You agree to title, register and license the Vehicle in the state in which it is garaged. You must request any power of attorney required from us to title, register or license the Vehicle.

**29. Ownership.** We are the owner of the Vehicle. You have no rights of ownership or title to the Vehicle unless You purchase the Vehicle.

**30. Security Interest.** You grant us a security interest, to the extent permitted by law, in the following, to secure performance of Your Lease obligations: (1) proceeds of any insurance with respect to the Vehicle; (2) proceeds of any service contract purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing. You will not allow any lien or encumbrance to attach to the Vehicle.

**31. Modification.** Any change to this Lease must be in writing and signed by Assignee, however, if permitted by law, extensions, deferral, or due date changes may be agreed to orally by You and Assignee and we will send You written confirmation.

**32. Assignment.** You may not assign, sell, sublease or arrange an assumption of Your interests or rights under this Lease or in the Vehicle without our prior written permission. This Lease will be assigned to the Assignee named on the front. We can assign the Lease to another person, who will have all our rights. You agree and grant us permission to provide information about You, the Vehicle or this Lease to our affiliates at any time, subject to the terms of Assignee's Privacy Policy. Lessor and its employees are not agents of Assignee and have no authority to obligate Assignee. You may request that a third party assume Your Lease.

**33. Enforceability.** Each person who signs this Lease is jointly and severally liable under this Lease and for all payments, whether or not we try to collect from the other signers. We do not have to release the Vehicle to exercise any of our rights. We do not give up any of our rights by delaying or failing to exercise them. This Lease is subject to the laws of the state where it was signed. This Lease is the entire agreement between You and us. We are not bound by any statements or representations made by agents or salespeople if not contained in this Lease. We make no promises regarding any tax benefits to You from leasing. If any provision of this Lease is held to be unenforceable, void, illegal or otherwise against applicable law, the other provisions shall survive and be enforceable separately from any voided provisions.

---

## IMPORTANT ARBITRATION DISCLOSURES

**The following Arbitration provisions significantly affect Your rights in any dispute with us. Please read this carefully before You sign the Lease.**

For purposes of the Arbitration provisions, the term "us" refers to the Lessee, Co-Lessee and Lessor, and Lessor's successors and assignees.

1. If either of us chooses, any dispute between us will be decided by arbitration and not in court.
2. If a dispute is arbitrated, each of us will give up the right to trial by a court or a jury trial.
3. You agree to give up any right You may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and You agree to give up any right You may have to consolidate Your arbitration with the arbitration of others.
4. The information that can be obtained in discovery from each other or from third persons in an arbitration is generally more limited than in a lawsuit.
5. Other rights that each of us would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this Lease, the arbitration clause or the arbitrability of any issue), between us or Lessor's employees, agents, successors or assigns, which arises out of or relates to this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at the election of either of us (or the election of any such third party), be resolved by a neutral, binding arbitration and not by a court action. Whoever first demands arbitration may choose to proceed under the applicable rules of the American Arbitration Association, or its successor, which may be obtained by mail from the American Arbitration Association, Attn: Customer Service Department, 335 Madison Ave., 10th Floor, NY, NY 10017-4605 or on the Internet at http://www.adr.org/, or the applicable rules of JAMS, or its successor, which may be obtained by mail from JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614 or on the Internet at: http://www.jamsadr.com, or the applicable rules of the National Arbitration Forum, or its successor, which may be obtained by mail from The Forum, P.O. Box 50191, Minneapolis, Minnesota 55405-0191 or on the Internet at: http://www.arbitration-forum.com.

Whichever rules are chosen, the arbitrator shall be a lawyer or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. The arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which You reside. If You demand arbitration first, You will pay the claimant's initial arbitration filing fees or case management fees required by the applicable rules up to $125, and we will pay any additional initial filing fees or case management fees. If we demand arbitration first, We will pay the whole filing fee or case management fee if we demand arbitration first. We will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. The arbitrator shall decide who shall pay any additional costs and fees. Nothing in this paragraph shall prevent You from requesting that the applicable arbitration entity reduce or waive Your fees, or that we voluntarily pay an additional share of said fees, or based upon Your financial circumstances or the nature of Your claim.

This Lease evidences a transaction involving interstate commerce. Any arbitration under this Lease shall be governed by the Federal Arbitration Act (9 USC 1, et seq). Judgement upon the award rendered may be entered in any court having jurisdiction.

Notwithstanding this provision, both You and Lessor and Lessor's successors and assignees retain the right to exercise self-help remedies and to seek provisional remedies from a court pending final determination of the dispute by the arbitrator. Neither of us waives the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court. If any provision of this arbitration agreement is found to be unenforceable or invalid, that provision shall be severed and the remaining provisions shall be given full effect as if the severed provision had not been included.

---

## LESSOR ASSIGNMENT

For valuable consideration, Lessor assigns, sells and transfers to Assignee all of Lessor's interest in the Lease and the Vehicle described in it and authorizes Assignee to collect and discharge the obligation of the Lease and its assignment. Lessor warrants to Assignee that:

- this Lease is genuine, valid and arises from the true sale of the Vehicle;
- the Lease is complete and all disclosures required by law have been made prior to signing of the Lease;
- credit application accurately reflects the statements of Lessee;
- each Lessee has the capacity to contract and all signatures are genuine;
- the Vehicle is as described in the Lease and has been delivered to and accepted by the Lessee and is in the possession of the Lessee;
- title to the Vehicle and Lease is vested in Lessor without any lien or encumbrances, Lessor has taken all action to title and register the Vehicle in the name of Assignee and Lessee is eligible to obtain vehicle registration;
- all statements made by Lessee are true;
- Lessor has no option to purchase the Vehicle except as may be stated in the Lease;
- there is no fact which invalidates or reduces the value of the Lease; and
- this Lease is assigned pursuant to the Direct Lease Finance Plan ("Plan") and is subject to all agreements contained in the Plan.

If there is a breach of any warranty, Lessor shall repurchase the Lease from Assignee for the full amount then unpaid under the Lease together with the Fair Market Wholesale Value of the Vehicle described in the Lease, whether or not the Lease shall then be in default. Lessor indemnifies Assignee for any loss, including attorneys fees and court costs resulting from any claim or defenses of Lessee against Lessor. Assignee may assign its interest in the Lease without notice to Lessor and the Assignee shall have the benefits of all of Lessor's rights and remedies.

NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION



Patent # 4,227,720

## ODOMETER DISCLOSURE STATEMENT AND STATEMENT OF SELLER

**NOTE: FEDERAL LAW** requires that you state the mileage upon transfer of ownership. Failure to complete this disclosure or providing false information may result in fines and/or imprisonment.

I/We state that the odometer now reads _____ (do not show tenths of a mile) and to the best of my/our knowledge that reflects the actual mileage of the vehicle described on the reverse side of this Certificate of Ownership, unless one of the following statements is checked:

_____ (1) I/We hereby certify that to the best of my/our knowledge the odometer has exceeded its mechanical limits and the reading started again at zero.

_____ (2) WARNING - ODOMETER DISCREPANCY - I/We hereby certify that the odometer reading is NOT the actual mileage, and should not be relied upon for accuracy.

**NOTE:** New Jersey statute provides that anyone who knowingly or willfully misrepresents the description of a vehicle or makes a false statement in any title papers; forges, changes or counterfeits a part of title papers; or uses title papers on or for the wrong motor vehicle is guilty of a misdemeanor.

I/We hereby assign and Warrant Certificate of Ownership of the vehicle described on the front of this Certificate of Ownership subject to the following lien(s) or encumbrance(s), if any, and none other. I/We further certify the accuracy of the sale price and mileage as specified below.

**Buyer's Name** (Print) _____ Driver Lic. # _____

Buyer's Address _____ Corpcode # _____

**Co-Buyer's Name** (Print) _____ Driver Lic. # _____

Co-Buyer's Address _____ Corpcode # _____

**Lienholder's Name** (Print) _____ Driver Lic. # _____

Lienholder's Address _____ Corpcode # _____

**Seller's Name** (Print) _____ Date of Sale _____

Seller's Address _____ Sale Price $ _____

**SELLER SIGN HERE**

Seller's Signature X _____ Seller's Signature X _____

Seller's Name (Hand Print) _____ Seller's Name (Hand Print) _____

Date of Odometer Statement _____

## STATEMENT OF BUYER

I/We, the undersigned, hereby certify that the motor vehicle described on the reverse side of this Certificate of Ownership was purchased by me/us and I/We have compared the vehicle identification number shown on this certificate with that of the motor vehicle purchased and found that they agree in every particular.

NOTE: R.S.39:10-11 requires that this certificate after assignment be presented to the Division of Motor Vehicles within ten days. Failure to do so will result in a penalty of $25 which will be in addition to the filing fee for a new Certificate of Ownership.

**BUYER SIGN HERE**

Buyer's Signature X _____ Buyer's Signature X _____

Buyer's Name (Hand Print) _____ Buyer's Name (Hand Print) _____

ALTERATIONS OR ERASURES WILL VOID THIS CERTIFICATE